# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

**ANDREW TAYLOR DIXON,**
Plaintiff,

Case No.: _8:26-CV-01678 - MSS-NHA_

v.

CHAD CHRONISTER, in his official capacity as Sheriff of Hillsborough County;
DEPUTY JARED W. CURTIS, HCSO Deputy, in his individual capacity;
DEPUTY COLTON L. ROGERS, HCSO Deputy, in his individual capacity;
DEPUTY JAMES F. PRETO, HCSO Deputy, in his individual capacity; and
DEPUTY BRIAN PULLIDO, K9 Handler for K9 Fin, in his individual capacity,
Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Andrew Taylor Dixon, proceeding pro se, sues Defendants under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution. Plaintiff alleges the following based on personal knowledge as to his own acts and observations and, as to all other matters, on information and belief after review of body-worn camera footage, CAD records, dispatch audio, radio transmissions, reports, affidavits, Internal Affairs materials, public records, and related evidence.

## I. NATURE OF THE ACTION

1. This is a federal civil rights action arising from a June 28, 2024 traffic stop on Interstate 75 southbound near the Selmon Expressway exit in Hillsborough County, Florida.

2. Plaintiff alleges that the stop was not handled as a routine traffic stop. Plaintiff alleges that deputies had already become interested in Plaintiff at a gas station while Plaintiff was lawfully purchasing scratch-off lottery tickets and that the later stop became a continuation of that pre-stop investigation.

3. Plaintiff alleges that Defendants obtained his driver's license, proof of insurance, and registration at the beginning of the stop; required him to exit the truck; patted him down; found no weapons and no contraband; and then continued holding him roadside while officers tried to obtain a K9 unit.

4. Plaintiff alleges that the stop was prolonged beyond the time reasonably necessary to complete the traffic mission so Defendants could pursue a narcotics investigation and a K9 sniff.

5. Plaintiff alleges that he refused consent to search his truck, which he had a constitutional right to do, and that Defendants then continued delaying, visually inspected the truck, coordinated K9 availability, and waited for K9 Fin to arrive.

6. Plaintiff alleges that when K9 Fin arrived, Plaintiff verbally objected that the stop had been unlawfully prolonged and repeatedly requested a supervisor or sergeant.

7. Plaintiff alleges that Defendants refused to call a supervisor, grabbed him, forced him to the ground, threatened him with a K9 bite, arrested him for resisting without violence, and searched his truck.

8. Plaintiff alleges that Defendants later claimed K9 Fin alerted, but any alleged alert occurred only after the stop had already been unlawfully prolonged and cannot retroactively cure the unlawful detention.

9. Plaintiff alleges that all criminal charges arising from the incident were later dropped, dismissed, or otherwise terminated in his favor.

10. Plaintiff seeks compensatory damages, punitive damages against the individual Defendants, declaratory relief, costs, and all other relief available by law.

## II. JURISDICTION AND VENUE

11. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

12. This Court has federal-question jurisdiction under 28 U.S.C. § 1331.

13. This Court has civil-rights jurisdiction under 28 U.S.C. § 1343.

14. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Hillsborough County, Florida, which is within the Tampa Division of this Court.

15. The acts and omissions alleged in this Complaint were committed by persons acting under color of the statutes, ordinances, regulations, customs, policies, practices, usages, and authority of the State of Florida and the Hillsborough County Sheriff's Office.

### III. PARTIES

16. Plaintiff Andrew Taylor Dixon is a natural person and resident of Florida.

17. Defendant Chad Chronister was, at all relevant times, Sheriff of Hillsborough County and final policymaker for the Hillsborough County Sheriff's Office as to law-enforcement operations, deputy training, traffic enforcement practices, K9 deployment practices, internal investigations, and official law-enforcement policy. Sheriff Chronister is sued in his official capacity only.

18. Defendant Deputy Jared W. Curtis was, at all relevant times, employed by the Hillsborough County Sheriff's Office and acting under color of state law. Deputy Curtis initiated the traffic stop, approached Plaintiff's driver-side window, requested Plaintiff's documentation, requested consent to search, re-approached and visually inspected Plaintiff's truck, participated in the K9-related investigation,

delayed completion of the traffic stop, participated in the vehicle search, and contributed to reports, affidavits, or charges.

19. Defendant Deputy Colton L. Rogers was, at all relevant times, employed by the Hillsborough County Sheriff's Office and acting under color of state law. Deputy Rogers arrived at approximately 12:40:34 PM to 12:40:45 PM, engaged Plaintiff in extended conversation about work, family, travel, and other personal matters, remained present during the prolonged detention, and assisted in the takedown and arrest.

20. Defendant Deputy James F. Preto was, at all relevant times, employed by the Hillsborough County Sheriff's Office and acting under color of state law. Deputy Preto arrived at approximately 12:45:04 PM to 12:45:09 PM, approached Deputy Curtis's cruiser, communicated with Deputy Curtis through the cruiser passenger-side window, later instructed Plaintiff to move away from the truck toward the rear of Deputy Curtis's cruiser at approximately 12:55:18 PM, refused Plaintiff's request for a supervisor, and participated in the physical escalation and arrest. 21. Defendant Deputy Brian Pullido was, at all relevant times, employed by the Hillsborough County Sheriff's Office as a K9 handler and acted under color of state law. Deputy Pullido arrived with K9 Fin, participated in the K9 deployment, threatened Plaintiff with a K9 bite during the takedown, restrained the dog when it

lunged or jumped toward Plaintiff, and participated in or supplied justification for the vehicle search.

22. Plaintiff identifies Deputies Jared W. Curtis, Colton L. Rogers, and James F. Preto based on criminal discovery materials, body-worn camera timestamps, CAD records, State discovery disclosures, and the Motion to Suppress filed in the underlying criminal case. Plaintiff alleges these named deputies correspond to the roles previously identified by conduct, timing, body-worn camera position, radio participation, and involvement in the stop.

23. Plaintiff will seek discovery to confirm each deputy's badge number, employee number, body-worn camera identifier, patrol vehicle identifier, radio identifier, CAD login, assignment, unit number, supervisor chain, and precise role in the stop, detention, K9 investigation, takedown, arrest, search, seizure, reporting, and complaint review. Plaintiff further reserves the right to seek leave to amend if discovery shows that any additional HCSO personnel personally participated in, directed, approved, assisted, or failed to intervene in the unconstitutional conduct alleged in this Complaint.

23A. Plaintiff alleges that HCSO and/or its records personnel previously refused or failed to disclose complete identifying information for the deputies involved on the basis that certain deputies were undercover personnel and that Florida public-records law did not require disclosure of their identities. Plaintiff alleges, however,

that Deputies Curtis, Rogers, and Preto personally participated in a public roadside traffic stop, detention, K9 investigation, physical takedown, arrest, and vehicle search on the shoulder of Interstate 75. Plaintiff does not seek disclosure of unrelated undercover operations, confidential sources, surveillance methods, home addresses, private contact information, family information, or operational details. Plaintiff seeks only identifying and role information necessary to serve and litigate claims against deputies who personally participated in the constitutional violations alleged in this Complaint.

23B. Plaintiff further alleges that any legitimate safety or undercover concern can be addressed through a protective order, sealed filing, limited disclosure, redaction of unrelated undercover information, or another court-controlled procedure. Plaintiff alleges that a state-law public-records exemption should not be used as a complete shield to prevent identification, service, discovery, or accountability for individual-capacity defendants who personally participated in the public detention, arrest, force, search, and seizure at issue.

23C. Plaintiff requests that Defendants and HCSO preserve and produce identifying records sufficient to confirm the names, badge numbers, employee numbers, assignments, unit numbers, body-worn camera identifiers, patrol vehicle identifiers, dispatch logins, CAD identifiers, radio identifiers, shift rosters, supervisor logs, K9 unit records, report metadata, audit trails, and records showing

who viewed, edited, exported, redacted, approved, or transmitted any evidence related to the incident or complaint review.

24. Each individual Defendant personally participated in, directed, approved, assisted, acquiesced in, or failed to intervene in the unconstitutional conduct alleged in this Complaint.

25. At all relevant times, the individual Defendants were acting within the course and scope of their employment or apparent authority as Hillsborough County Sheriff's Office deputies, although Plaintiff alleges they violated clearly established constitutional rights.

## IV. FACTUAL ALLEGATIONS

### A. Pre-stop surveillance and gas-station targeting

26. On Friday, June 28, 2024, Plaintiff stopped at a gas station after work.

27. Plaintiff entered and exited the gas station store multiple times.

28. Plaintiff purchased scratch-off lottery tickets.

29. Plaintiff's conduct at the gas station was lawful.

30. Plaintiff did not threaten anyone at the gas station.

31. Plaintiff did not steal anything.

32. Plaintiff did not damage property.

33. Plaintiff did not display a weapon.

34. Plaintiff did not commit a crime inside the gas station.

35. At approximately 12:25:16 PM, radio traffic reflected deputies discussing Plaintiff, his appearance, his movements, and his vehicle.

36. The radio traffic described Plaintiff as a male wearing a green shirt with tattoos who had gone in and out of the store multiple times and was purchasing scratch-off lottery tickets.

37. Radio traffic included words to the effect that Plaintiff was watching over his shoulder or looking around while inside or around the store.

38. Radio traffic included words to the effect of "watch what y'all are doing."

39. Radio traffic referenced nearby locations including a Red Roof Inn and a storage area.

40. Radio traffic identified Plaintiff's vehicle as a black Dodge Ram pickup truck with ladders.

41. Plaintiff alleges that these communications show deputies had already developed investigative interest in Plaintiff before any alleged traffic violation occurred.

42. Plaintiff alleges that no dispatch record, report, or radio transmission identified any actual crime committed by Plaintiff at the gas station.

43. Plaintiff alleges that the pre-stop surveillance is relevant because it shows the traffic stop did not arise in isolation and instead became a continuation of a preexisting suspicion unrelated to traffic safety.

## B. Alleged traffic basis and stop location

44. After Plaintiff left the gas station area, deputies positioned themselves behind or near Plaintiff's truck.

45. Defendants later claimed that Plaintiff crossed solid white lane markings, improperly entered a turn lane, cut across traffic, or otherwise committed a traffic infraction.

46. Plaintiff disputes Defendants' characterization of the alleged traffic maneuver.

47. Plaintiff alleges that roadway photographs and the roadway configuration do not support the exaggerated description used in later reports and affidavits.

48. Plaintiff alleges that no nearby motorist was forced to brake, swerve, or take evasive action because of Plaintiff's movement.

49. Plaintiff alleges that traffic conditions were open or light and that the alleged maneuver did not create an actual traffic hazard.

50. Plaintiff alleges that even if Defendants contend that the initial stop was lawful, the subsequent detention, K9 delay, force, arrest, search, and property seizure exceeded the lawful scope and duration of a traffic stop.

51. Plaintiff was stopped on Interstate 75 southbound near the Selmon Expressway exit in Hillsborough County, Florida.

52. At approximately 12:37 PM and 49 seconds, dispatch traffic referenced the stop location as Interstate 75 southbound just before the Selmon Expressway exit involving a black Dodge Ram pickup truck with a Florida tag.

53. Plaintiff alleges that the stop location and timing are confirmed by CAD records, radio communications, body-worn camera footage, and related records.

## C. Initial contact and documentation

54. At approximately 12:33:52 PM, body-worn camera footage shows Deputy Jared W. Curtis at Plaintiff's driver-side window explaining the alleged reason for the stop.

55. Plaintiff promptly provided his driver's license.

56. Plaintiff promptly provided proof of insurance.

57. Plaintiff promptly provided vehicle registration.

58. Plaintiff did not delay the stop by refusing to provide documentation.

59. Plaintiff did not provide false identifying information.

60. Plaintiff did not attempt to leave the scene.

61. Plaintiff was calm and cooperative during the initial contact.

62. Plaintiff alleges that by promptly providing the documents requested, he did nothing to prolong the traffic stop.

63. Plaintiff alleges that after receiving Plaintiff's documentation, Deputy Jared W. Curtis had the information necessary to run ordinary traffic-related checks, write a

warning or citation, and complete the traffic mission without pursuing an unrelated narcotics investigation.

**D. Removal from truck, pat-down, and early K9 focus**

64. At approximately 12:36 PM, Deputy Jared W. Curtis asked Plaintiff to exit the truck.

65. Plaintiff complied with the instruction to exit.

66. Plaintiff voluntarily submitted to a pat-down search.

67. Plaintiff submitted to the pat-down to be cooperative and respectful, not because Plaintiff consented to a search of the truck.

68. The pat-down revealed no weapons.

69. The pat-down revealed no contraband.

70. After the pat-down, Plaintiff remained outside his truck.

71. Plaintiff was not told he was free to leave.

72. Plaintiff remained detained on the side of a busy interstate highway.

73. At approximately 12:37:09 PM, radio traffic confirmed that Plaintiff had already been removed from the truck and patted down.

74. The radio traffic included words to the effect of "I just had him exit, pat him down for weapons."

75. The radio traffic included words to the effect that Plaintiff was "hanging at the bumper of the truck."

199. Plaintiff alleges that all charges arising from the incident were later dropped, dismissed, or otherwise terminated in Plaintiff's favor.

## K. Reports, affidavits, Internal Affairs, and ratification

200. Plaintiff alleges that reports and affidavits described Plaintiff as "hostile," "agitated," "verbally confrontational," "looking for an escape route," or presenting an officer-safety concern.

201. Plaintiff disputes those characterizations.

202. Plaintiff alleges that the full body-worn camera timeline shows extended calm conversation, compliance, and lack of immediate threat before the K9 arrival and Plaintiff's request for a supervisor.

203. Plaintiff had already provided documentation, exited the truck, and submitted to a pat-down before the escalation.

204. No weapons were found on Plaintiff.

205. Multiple deputies were present before the escalation.

206. Plaintiff alleges that the reports omit or minimize the K9-related delay.

207. Plaintiff alleges that the reports omit or minimize Plaintiff's repeated requests for a supervisor.

208. Plaintiff alleges that the reports omit or minimize the K9 lunge and bite threat.

209. Plaintiff alleges that the reports selectively focus on the final moments of the stop while minimizing the nearly twenty-minute detention and K9 coordination that preceded the escalation.

210. Plaintiff alleges that the reports attempted to portray the incident as a rapidly evolving officer-safety emergency rather than a prolonged traffic stop transformed into a narcotics investigation.

211. Plaintiff filed a complaint with the Hillsborough County Sheriff's Office.

212. Internal Affairs or the Professional Standards Bureau reviewed body-worn camera footage, CAD records, radio transmissions, and related materials.

213. Internal Affairs classified Plaintiff's complaint as "unfounded."

214. Corporal Hendricks left Plaintiff a voicemail stating that the complaint had been thoroughly documented and that the outcome remained unfounded.

215. Plaintiff alleges that HCSO ratified the involved deputies' conduct despite objective evidence showing a prolonged K9 detention, delayed completion of the traffic stop, escalation after protected speech, threatened K9 force, arrest, search, and seizure.

216. Plaintiff alleges that HCSO's unfounded finding, after review of the actual recordings and timestamps, supports Plaintiff's official-capacity claim because the agency approved or adopted the deputies' conduct as proper.

216A. Plaintiff further alleges that during a recorded phone call with HCSO and/or HCSO Professional Standards personnel concerning Plaintiff's complaint, Plaintiff was told that he could not record the call. Plaintiff alleges that this statement was legally incorrect as applied to communications with law-enforcement personnel acting in their official capacity concerning official public business.

216B. Plaintiff alleges that the recorded call is relevant because it reflects HCSO's misunderstanding, training failure, or practice of discouraging citizens from documenting law-enforcement conduct and official complaint-related communications. Plaintiff further alleges that the recorded call supports Plaintiff's official-capacity and Monell allegations because it shows HCSO failed to properly train, supervise, and correct personnel regarding citizens' constitutional rights, protected speech, recording of official police activity, and complaint-handling procedures.

216C. Plaintiff also alleges that the original, unedited, native-format versions of all recordings, logs, metadata, reports, audit trails, dispatch materials, K9 records, Internal Affairs materials, Professional Standards materials, and communications related to the incident are material to the claims in this action because the case depends heavily on timing, sequence, officer identity, K9 coordination, recording integrity, report timing, and whether any evidence was edited, clipped, redacted, exported, converted, overwritten, or altered.

Page 27

# V. CLAIMS FOR RELIEF

## COUNT I - FOURTH AMENDMENT UNLAWFUL PROLONGED DETENTION

**Against Deputy Jared W. Curtis, Deputy Colton L. Rogers, Deputy James F. Preto, and Deputy Brian Pullido, in their individual capacities**

217. Plaintiff realleges and incorporates paragraphs 1 through 216 as if fully set forth herein.

218. A traffic stop is a seizure under the Fourth Amendment.

219. A traffic stop may last only as long as reasonably necessary to complete the mission of the stop.

220. The ordinary mission of a traffic stop includes addressing the traffic violation, checking license, registration, insurance, warrants, and ordinary roadway-safety concerns.

221. A dog sniff is not part of the ordinary mission of a traffic stop.

222. In Rodriguez v. United States, 575 U.S. 348 (2015), the Supreme Court held that police may not prolong a completed or otherwise ongoing traffic stop for a dog sniff absent independent reasonable suspicion.

223. In United States v. Campbell, 26 F.4th 860 (11th Cir. 2022) (en banc), the Eleventh Circuit held that unrelated investigative activity that adds time to a traffic stop violates the Fourth Amendment unless supported by reasonable suspicion.

Page 28

224. Plaintiff provided his license, insurance, and registration at approximately 12:33:52 PM.

225. Plaintiff exited the truck and was patted down at approximately 12:36 PM.

226. The pat-down revealed no weapons and no contraband.

227. Rather than promptly completing the traffic mission, Defendants continued holding Plaintiff roadside while they requested, coordinated, and waited for a K9 unit.

228. Defendants engaged in non-traffic investigative conduct including requesting consent to search, visually inspecting the truck after consent was refused, coordinating K9 availability, asking redundant questions, and waiting for K9 Fin to arrive.

229. Defendants lacked independent reasonable suspicion sufficient to prolong the traffic stop for a K9 investigation.

230. Each individual Defendant either personally prolonged the detention, participated in the K9-related continuation of the detention, or failed to intervene despite having a realistic opportunity to prevent the unconstitutional detention. 231. The prolonged detention violated Plaintiff's clearly established Fourth Amendment rights.

232. As a direct and proximate result, Plaintiff suffered loss of liberty, fear, humiliation, emotional distress, physical pain, financial loss, and other damages.

## COUNT II - FOURTH AMENDMENT UNREASONABLE SEARCH OF VEHICLE AND WALLET

**Against Deputy Jared W. Curtis, Deputy Brian Pullido,D eputy James F. Preto, and Deputy Colten L. Rogers, to have personally participated in, directed, assisted, approved, or failed to intervene in the search, in their individual capacities**

233. Plaintiff realleges and incorporates all preceding paragraphs.

234. Plaintiff had a reasonable expectation of privacy in his truck and wallet.

235. Plaintiff refused consent to search his truck.

236. Plaintiff did not consent to a wallet search.

237. Defendants searched Plaintiff's truck after the stop had already been unlawfully prolonged for a K9 investigation.

238. Defendants claimed that K9 Fin alerted or indicated on the truck.

239. Plaintiff disputes the timing, reliability, and validity of any alleged K9 alert.

240. Even if an alert occurred, the alert cannot retroactively cure an unconstitutional detention that had already prolonged the stop beyond its lawful mission.

241. Under Wong Sun v. United States, 371 U.S. 471 (1963), evidence derived from unconstitutional conduct is subject to taint principles.

Page 30

242. The search of Plaintiff's wallet was a separate intrusion into a protected personal effect.

243. Defendants lacked consent, a warrant, or a valid exception sufficient to justify the searches under the facts alleged.

244. The searches violated Plaintiff's clearly established Fourth Amendment rights.

245. As a direct and proximate result, Plaintiff suffered loss of privacy, seizure of property, criminal accusation, emotional distress, financial loss, and other damages.

## COUNT III - FOURTH AMENDMENT FALSE ARREST / UNREASONABLE SEIZURE

**Against Deputy Jared W. Curtis, Deputy Colton L. Rogers, and Deputy James F. Preto, in their individual capacities**

246. Plaintiff realleges and incorporates all preceding paragraphs.

247. A warrantless arrest requires probable cause.

248. Plaintiff was arrested for resisting without violence.

249. Plaintiff did not strike, punch, kick, push, or attempt to injure any deputy.

250. Plaintiff did not flee the scene.

251. Plaintiff did not threaten violence.

252. Plaintiff's verbal objection to the prolonged stop and request for a supervisor did not constitute probable cause.

253. Plaintiff's profanity, without threats or violence, did not constitute probable cause.

254. Plaintiff alleges that any movement by Plaintiff occurred only after Defendants suddenly grabbed him without clearly stating that he was under arrest.

255. Plaintiff alleges that because the stop had already been unlawfully prolonged, Defendants were not lawfully executing the traffic mission when they escalated the encounter into an arrest.

256. Defendants lacked probable cause or arguable probable cause to arrest Plaintiff under the facts alleged.

257. The arrest violated Plaintiff's clearly established Fourth Amendment rights.

258. As a direct and proximate result, Plaintiff suffered loss of liberty, jail detention, criminal charges, humiliation, emotional distress, physical pain, financial loss, and other damages.

## COUNT IV - FOURTH AMENDMENT EXCESSIVE FORCE AND THREATENED K9 FORCE

**Against Deputy Colton L. Rogers, Deputy James F. Preto, and Deputy Brian Pullido, in their individual capacities**

259. Plaintiff realleges and incorporates all preceding paragraphs.

260. Claims of excessive force during an arrest or investigatory detention are governed by the Fourth Amendment's objective-reasonableness standard. 261. Graham v. Connor, 490 U.S. 386 (1989), requires consideration of the severity of the suspected offense, whether the person posed an immediate threat, and whether the person was actively resisting or attempting to flee.

262. Plaintiff was originally stopped for an alleged traffic infraction.

263. Plaintiff was unarmed.

264. Plaintiff had already been patted down.

265. Plaintiff was substantially outnumbered by deputies.

266. Plaintiff was not fleeing.

267. Plaintiff was not threatening violence.

268. Plaintiff was verbally objecting to the prolonged stop and requesting a supervisor.

269. Defendants nevertheless grabbed Plaintiff, forced him to the ground, and handcuffed him.

270. During the takedown, Deputy Pullido brought K9 Fin within feet of Plaintiff's face.

271. K9 Fin lunged or jumped toward Plaintiff while restrained.

272. Deputy Pullido threatened Plaintiff with a K9 bite if Plaintiff "kept it up."

Page 33

273. The threatened use of a police dog substantially increased the severity and danger of the force used.

274. Priester v. City of Riviera Beach, 208 F.3d 919 (11th Cir. 2000), recognizes that unjustified K9 force can violate clearly established Fourth Amendment law.

275. Under the facts alleged, the force and threatened K9 force were objectively unreasonable.

276. Defendants violated Plaintiff's clearly established Fourth Amendment rights.

277. As a direct and proximate result, Plaintiff suffered physical pain, fear of serious injury, emotional distress, humiliation, anxiety, and other damages.

## COUNT V - FIRST AMENDMENT RETALIATORY ARREST AND RETALIATORY ESCALATION

**Against Deputy Colton L. Rogers, and Deputy James F. Preto, to have escalated, directed, assisted, approved, or failed to intervene because of Plaintiff's protected speech, in their individual capacities**

278. Plaintiff realleges and incorporates all preceding paragraphs.

279. Plaintiff verbally objected to the prolonged detention.

280. Plaintiff stated that Defendants were violating his rights by holding him for a K9 investigation.

281. Plaintiff requested that a supervisor or sergeant be called.

282. Plaintiff used profanity, but he did not make a true threat.

283. Verbal criticism of police officers is protected speech under the First Amendment.

284. City of Houston v. Hill, 482 U.S. 451 (1987), recognizes the constitutional protection for verbal challenge and criticism directed at police officers.

285. Defendants escalated the encounter immediately after Plaintiff engaged in protected speech and demanded supervisory review.

286. Defendants grabbed, took down, handcuffed, and arrested Plaintiff after he objected to the K9 delay and demanded a supervisor.

287. Plaintiff alleges that Defendants lacked probable cause to arrest him.

288. Plaintiff alleges that the timing and circumstances show that Plaintiff's protected speech was a motivating factor in the escalation and arrest.

289. Defendants' conduct would chill a person of ordinary firmness from verbally objecting to unconstitutional police conduct.

290. Defendants violated Plaintiff's clearly established First Amendment rights.

291. As a direct and proximate result, Plaintiff suffered loss of liberty, physical pain, humiliation, emotional distress, criminal charges, financial loss, and other damages.

## COUNT VI - FOURTH AMENDMENT MALICIOUS PROSECUTION

**Against Deputy Jared W. Curtis, Deputy Colton L. Rogers, Deputy James F. Preto, and Deputy Brian Pullido, in their individual capacities**

292. Plaintiff realleges and incorporates all preceding paragraphs.

293. Defendants caused, participated in, or materially contributed to criminal charges being initiated against Plaintiff.

294. The charges included resisting without violence and drug-related accusations arising from the detention, arrest, search, and seizure described above.

295. The charges were based on the unlawful prolonged detention, unlawful arrest, unlawful search, and materially incomplete or misleading reports and affidavits.

296. The charges lacked probable cause under the facts alleged.

297. Legal process caused Plaintiff to suffer a continued seizure, criminal prosecution, court obligations, restrictions, reputational harm, and other liberty-related injuries.

298. The criminal proceedings were dismissed, dropped, abandoned, or otherwise terminated in Plaintiff's favor.

299. Williams v. Aguirre, 965 F.3d 1147 (11th Cir. 2020), recognizes a § 1983 malicious-prosecution claim where legal process causes a seizure unsupported by probable cause and the criminal proceeding terminates favorably.

300. Defendants violated Plaintiff's clearly established Fourth Amendment rights.

301. As a direct and proximate result, Plaintiff suffered loss of liberty, emotional distress, reputational injury, financial loss, court-related burdens, and other damages.

## COUNT VII - FOURTH AMENDMENT UNLAWFUL SEIZURE OF PROPERTY

**Against Deputy Jared W. Curtis, to have personally participated in, directed, assisted, approved, or failed to intervene in the property seizure, in their individual capacities**

302. Plaintiff realleges and incorporates all preceding paragraphs.

303. Defendants seized approximately $5,870 in cash from Plaintiff.

304. The cash was lawful money from lawful work and lawful sources.

305. Possession of cash is not illegal.

306. Defendants lacked probable cause to believe the cash was contraband, proceeds of a crime, or evidence of a crime.

307. The seizure followed and was tainted by the unlawful prolonged detention, unlawful arrest, and unlawful search alleged above.

308. Defendants omitted or minimized material context concerning the source of the money.

309. Defendants violated Plaintiff's clearly established Fourth Amendment rights by seizing property without lawful justification.

310. As a direct and proximate result, Plaintiff suffered financial loss, loss of use of funds, emotional distress, and other damages.

## COUNT VIII - FAILURE TO INTERVENE

**Against Deputy Colten Rogers, and Deputy James Preto, in their individual capacities**

311. Plaintiff realleges and incorporates all preceding paragraphs.

312. An officer who is present at the scene and observes another officer violating constitutional rights may be liable under § 1983 if the officer had a realistic opportunity to intervene and failed to do so.

313. The prolonged detention developed over many minutes, not seconds.

314. Multiple deputies were present during the K9 delay, detention, refusal to call a supervisor, force, arrest, search, and seizure.

315. The deputies had time to recognize that Plaintiff had provided documentation, had been patted down, was unarmed, had refused consent, and was being held for a K9 investigation.

316. The deputies had time to recognize that Plaintiff was verbally objecting and requesting supervisory review rather than threatening violence.

317. The deputies had a realistic opportunity to stop or reduce the unconstitutional conduct, including the prolonged detention, force, threatened K9 bite, arrest, search, and property seizure.

318. The individual Defendants failed to intervene.

319. The failure to intervene violated Plaintiff's clearly established constitutional rights.

320. As a direct and proximate result, Plaintiff suffered loss of liberty, physical pain, emotional distress, property loss, financial loss, and other damages.

## COUNT IX - MUNICIPAL LIABILITY / OFFICIAL-CAPACITY CLAIM

**Against Defendant Chad Chronister, in his official capacity as Sheriff of Hillsborough County**

321. Plaintiff realleges and incorporates all preceding paragraphs.

322. An official-capacity claim against Sheriff Chronister is a claim against the governmental entity responsible for the Hillsborough County Sheriff's Office. 323. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a local governmental entity may be liable under § 1983 when an official policy, custom, practice, final policymaker decision, ratification, or deliberately indifferent training failure causes a constitutional violation.

324. Under City of Canton v. Harris, 489 U.S. 378 (1989), inadequate training may support municipal liability when the failure to train amounts to deliberate indifference and causes constitutional injury.

325. Sheriff Chronister was the final policymaker for HCSO law-enforcement operations, deputy training, traffic-stop practices, K9 practices, supervision, internal investigation, and discipline.

326. Plaintiff alleges that HCSO maintained policies, customs, or practices permitting deputies to use minor traffic stops as gateways to unrelated narcotics investigations without adequate reasonable-suspicion safeguards.

327. Plaintiff alleges that HCSO maintained policies, customs, or practices permitting deputies to extend stops for K9 coordination through unrelated questioning, consent requests, vehicle-window inspection, and waiting time not reasonably tied to the traffic mission.

328. Plaintiff alleges that HCSO failed to adequately train deputies on Rodriguez v. United States and the constitutional limit on prolonging traffic stops for dog sniffs absent independent reasonable suspicion.

329. Plaintiff alleges that HCSO failed to adequately train deputies that refusal to consent to a search does not create reasonable suspicion or probable cause.

330. Plaintiff alleges that HCSO failed to adequately train deputies that verbal criticism, profanity, and requests for a supervisor are protected speech unless they constitute true threats or otherwise unlawful conduct.

331. Plaintiff alleges that HCSO failed to adequately train deputies on the constitutional limits of charging resisting without violence after an individual verbally objects to police conduct or reflexively reacts to sudden physical contact.

332. Plaintiff alleges that HCSO failed to adequately train K9 handlers and deputies regarding the use or threatened use of K9 force during a traffic-stop takedown involving an unarmed person originally stopped for a traffic infraction.

333. Plaintiff alleges that HCSO's policies, customs, practices, or training failures were moving forces behind the prolonged detention, arrest, force, search, and seizure alleged in this Complaint.

334. Plaintiff also alleges ratification. After Plaintiff complained, HCSO Internal Affairs or the Professional Standards Bureau reviewed body-worn camera footage, CAD records, radio transmissions, reports, and related materials.

335. Despite reviewing the objective timeline, HCSO classified Plaintiff's complaint as "unfounded."

336. Plaintiff alleges that the unfounded finding approved, adopted, or ratified the deputies' conduct, including the K9-related prolongation, refusal to call a supervisor, force, arrest, search, and seizure.

337. Plaintiff alleges that HCSO's ratification and failure to discipline or correct the conduct demonstrate deliberate indifference to the constitutional rights of persons stopped by HCSO deputies.

338. As a direct and proximate result of the policies, customs, practices, training failures, and ratification alleged above, Plaintiff suffered the constitutional injuries and damages described in this Complaint.

338A. Plaintiff alleges that HCSO's prior refusal or failure to disclose complete identifying information for deputies involved in the incident, based on alleged undercover status, despite their personal participation in a public roadside stop, detention, K9 investigation, takedown, arrest, search, and seizure, further supports Plaintiff's need for court-supervised identity and role discovery and demonstrates the importance of preserving all identity records and audit trails.

338B. Plaintiff alleges that the recorded phone call in which HCSO and/or Professional Standards personnel told Plaintiff that he could not record the call further supports the official-capacity claim because it reflects a training, supervision, policy, or practice problem concerning citizen recording rights, protected speech, complaint-handling procedures, and preservation of official communications.

338C. Plaintiff alleges that HCSO's handling of Plaintiff's complaint, refusal or failure to disclose the identities of the participating deputies, statement that

Page 42

Plaintiff could not record an official complaint-related call, and unfounded determination after review of objective evidence collectively support Plaintiff's allegations of ratification, failure to train, failure to supervise, and deliberate indifference.

## VI. CLEARLY ESTABLISHED RIGHTS

339. The rights violated were clearly established before June 28, 2024.

340. It was clearly established that officers may not prolong a traffic stop for a dog sniff absent independent reasonable suspicion.

341. It was clearly established that a person's refusal to consent to a search does not itself create reasonable suspicion or probable cause.

342. It was clearly established that a warrantless arrest requires probable cause.

343. It was clearly established that the use of force during a stop or arrest must be objectively reasonable under the Fourth Amendment.

344. It was clearly established that unjustified K9 force can violate the Fourth Amendment.

345. It was clearly established that verbal criticism of police officers, including profanity that is not a true threat, is protected by the First Amendment.

346. No reasonable officer would have believed that the conduct alleged in this Complaint was lawful under the circumstances.

## VII. DAMAGES

347. Plaintiff suffered loss of liberty from the unlawful prolonged detention.

348. Plaintiff suffered arrest and jail detention.

349. Plaintiff suffered physical pain from the takedown and handcuffing.

350. Plaintiff suffered fear of serious bodily injury from the K9 lunge, K9 proximity, and threatened K9 bite.

351. Plaintiff suffered emotional distress, anxiety, humiliation, embarrassment, and mental anguish.

352. Plaintiff suffered reputational harm from criminal charges that were later dismissed, dropped, or otherwise terminated in his favor.

353. Plaintiff suffered financial harm from the seizure of approximately $5,870.

354. Plaintiff suffered loss of use of his money and property.

355. Plaintiff suffered lost work opportunities and disruption to his work and personal affairs.

356. Plaintiff suffered damage, disturbance, or loss of privacy in his truck, wallet, and personal effects.

357. Plaintiff seeks compensatory damages in an amount to be determined by the jury, including damages exceeding $1,000,000.

358. Plaintiff seeks punitive damages against the individual Defendants because their conduct was intentional, reckless, malicious, or in callous disregard of Plaintiff's federally protected rights.

359. Smith v. Wade, 461 U.S. 30 (1983), authorizes punitive damages under § 1983 when a defendant acts with reckless or callous indifference to federally protected rights.

360. Plaintiff seeks costs, interest, and any attorney's fees recoverable by law if Plaintiff later obtains counsel or if such fees are otherwise legally available.

## VIII. JURY DEMAND

361. Plaintiff demands a trial by jury on all issues so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and grant the following relief:

A. Compensatory damages in an amount to be determined by the jury, including damages exceeding $1,000,000;

B. Punitive damages against the individual Defendants;

C. Declaratory relief stating that Defendants violated Plaintiff's constitutional rights;

D. Return of unlawfully seized property or damages for the unlawful seizure of property;

E. Costs and any recoverable attorney's fees under 42 U.S.C. § 1988 or other applicable law;

F. Prejudgment and post-judgment interest as permitted by law; and

G. Any other relief the Court deems just and proper.

Plaintiff further requests that the Court order Defendants to preserve all original, unedited, native-format evidence, metadata, audit trails, identity records, and electronically stored information relating to the June 28, 2024 stop, detention, K9 deployment, arrest, search, seizure, criminal charges, Internal Affairs review, Professional Standards review, and communications with Plaintiff.

Plaintiff further requests preservation of the original native-format warning-ticket record, electronic citation data, creation timestamp, start timestamp, completion timestamp, issuance timestamp, print timestamp, save timestamp, transmission timestamp, modification history, user-entry logs, audit trails, CAD links, RMS links, and metadata showing when the warning was started, saved, completed, printed, edited, exported, transmitted, issued, or otherwise finalized.

Plaintiff further requests appropriate relief allowing limited early discovery or other court-controlled procedures necessary to confirm the identities, badge numbers, employee identifiers, unit identifiers, body-worn camera identifiers,

Page 46

patrol vehicle identifiers, radio identifiers, CAD identifiers, shift rosters, supervisor logs, and related role records for Deputies Jared W. Curtis, Colton L. Rogers, James F. Preto, Deputy Brian Pullido, and any additional HCSO personnel shown to have participated in the June 28, 2024 stop, detention, K9 investigation, arrest, search, seizure, reporting, or complaint review, subject to any protective order the Court deems necessary.

## X. ANTICIPATED EVIDENCE AND RECORDS

362. Plaintiff anticipates relying on CAD dispatch logs, radio transmissions, body-worn camera footage, dashcam or in-car audio if available, warning-ticket records, affidavits, supplemental reports, K9 deployment records, K9 training and certification records, Internal Affairs or Professional Standards records, voicemail or communications from Corporal Hendricks, medical marijuana card evidence, property seizure records, roadway photographs, weather documentation, criminal case dismissal records, and other discovery obtained in this action.

363. Plaintiff does not attach every anticipated exhibit to this Complaint because the complaint is intended to plead claims, not to present all evidence. Plaintiff reserves the right to use the records listed above and any additional evidence obtained through discovery.

363A. Plaintiff also anticipates relying on the recorded phone call with HCSO and/ or HCSO Professional Standards personnel in which Plaintiff was told that he

could not record the call, together with any call logs, phone records, voicemail records, metadata, transcripts, and related communications.

363B. Plaintiff also anticipates relying on records identifying and confirming the roles of Deputies Jared W. Curtis, Colton L. Rogers, James F. Preto, and any additional HCSO personnel involved in the incident, including names, badge numbers, employee numbers, unit assignments, body-worn camera identifiers, patrol vehicle identifiers, CAD login records, radio identifiers, dispatch records, shift rosters, supervisor records, K9 unit records, and records showing who participated in, viewed, edited, exported, redacted, approved, transmitted, or preserved evidence relating to the incident.

363C. Plaintiff further anticipates relying on original, unedited, native-format versions of relevant evidence and electronically stored information, including body-worn camera footage, dash-camera footage, in-car audio, CAD logs, dispatch audio, radio transmissions, K9 deployment records, K9 training and certification records, RMS reports, affidavits, supplemental reports, warning-ticket records, property and evidence records, phone-call recordings, emails, text messages, metadata, audit trails, chain-of-custody records, export logs, edited clips, redacted versions, and all source files related to the stop, detention, K9 deployment, arrest, search, seizure, complaint review, and communications with Plaintiff.

363D. Plaintiff also anticipates relying on the warning ticket bearing the approximately 12:45 PM timestamp, together with the native electronic citation record, creation data, completion data, issuance data, print data, save data, modification history, user-entry logs, audit trails, CAD links, RMS links, and metadata necessary to determine whether the warning was created, started, completed, issued, printed, saved, transmitted, edited, or finalized at or around 12:45 PM.

Respectfully submitted,

**ANDREW TAYLOR DIXON**

Plaintiff, Pro Se

Address: 545 43cd Ave N, St.Petersburg, Fl, 33703

Telephone: 727-400-2294

Email: Andrewtd47@ gmail.com